## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

**USI INSURANCE SERVICES, LLC**
**100 Summit Lake Drive, Suite 400**
**Valhalla, NY 10595**

     *Plaintiff,*

v.

**DWIGHT DREW ELLIS, II**
**3816 Indigo Run Drive**
**Henrico, VA 23233**

     *Defendant.*

Civil Action No. ___3:21cv797___

## COMPLAINT

Plaintiff USI Insurance Services, LLC ("USI"), through undersigned counsel, sues Defendant Dwight Drew Ellis, II ("Ellis") for breach of his employment agreement, breach of his duty of loyalty, and tortious interference with USI's contractual relationships, and for its Complaint USI states:

## INTRODUCTION

1.     USI's predecessor in interest, Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), hired Ellis in 2007 as a Commercial Risk [Insurance] Producer in its Glen Allen, Virginia office. When Wells Fargo was about to be acquired by USI[1] in 2017, it entered into a new employment agreement with Ellis (the "Agreement").[2] After more than a decade with Wells Fargo and four years with USI, its successor, Ellis was terminated in January 2021.

2.     Ellis went to work for one of the USI clients he had serviced at USI, an auto

---

[1] In December 2017, USI purchased the Wells Fargo entity that had employed Ellis.
[2] A true and correct copy, entitled "Employment Agreement", is attached hereto as **Exhibit 1**.

dealership, as its Employee Benefit Director.  He stated that he had left the insurance industry, but his actions said otherwise.  He revised his internet social media profile on the LinkedIn platform to identify his new position, but omitted any mention of a new employer, leaving in the reference to USI as his most recent employer and misstating his departure date as February, 2021.  He also left Glen Allen, Virginia as his location, although his new employer has no office or dealership there, and published only a personal email address for contacting him.  These and Ellis's other actions after being terminated are consistent with his intent to resume his career as a commercial insurance producer after the expiration of his restrictive covenant obligations to USI.

3.      After being terminated by USI, Ellis retained knowledge of USI's employees, its insured clients, and its prospective clients, all of which knowledge he promptly began using to USI's detriment.  Since terminating Ellis, USI learned facts supporting a conclusion that Ellis, either directly or indirectly, solicited USI clients he had serviced for USI to move their business to a colleague with whom he had worked at Wells Fargo before it was acquired by USI.  The colleague left Wells Fargo to join a competitor shortly before the acquisition.  After Ellis's departure, USI learned of no fewer than three USI clients who terminated their relationships with USI to retain the competitor that employs Ellis's friend.

4.      USI also learned after Ellis's termination that, while he was employed by USI, Ellis diverted business opportunities from USI to the friend and to other competitors, accepting kickbacks for doing so, all for his own personal gain.  Electronic information Ellis left behind at USI reflected that he also may have purported to act on behalf of USI to service insureds he referred to other brokers.  Ellis engaged in these activities both before his termination from USI, in violation of his common law duty of loyalty to his employer, and after his termination, in violation of continuing contractual obligations to USI he had assumed in the Agreement.  His

deceptive and disloyal behavior permeated his performance at USI in substantial part.

5.      Having confirmed Ellis's self-dealing and received documentation (described below) indicating the extent of the harm Ellis has caused and likely will continue to cause to USI's economic interests, USI now seeks monetary damages for its losses flowing from the business opportunities usurped by Ellis at USI's expense in violation of Ellis's common law duty of loyalty to USI.  USI also seeks disgorgement of monies paid to Ellis during his period of disloyalty.  USI also seeks to recover monetary damages for losses arising out of Ellis's breaches of his Employment Agreement with USI, and damages (including exemplary and punitive damages) for his tortious interference with USI's contractual and prospective contractual or beneficial business relationships.  Finally,  USI seeks injunctive relief to give it the benefit of its Agreement with Ellis by prohibiting him from engaging in such wrongful activity in the future, for at least the period of time to which he previously agreed, as set forth more fully below.

## THE PARTIES

6.      USI is a limited liability company organized under the laws of the State of Delaware, having its principal place of business located at 200 Summit Lake Drive, Suite 350, Valhalla, New York 10595.  USI is a leading provider of insurance brokerage and consulting services in connection with personal risk management, property and casualty insurance, employee benefits, retirement programs, and other specialty solutions.  USI is licensed to provide insurance brokerage services in the Commonwealth of Virginia, operating out of five offices, including its Glen Allen office (also known as the "Richmond office"), where Ellis had been based prior to his termination.

7.      In the course of its business, USI has made substantial investments in developing goodwill and in compiling valuable and confidential business information, including information

relating to the identity and contact information for its clients and prospective clients, terms and conditions of coverages, particularized insurance needs, requirements, risk specifications, preferences, expiration dates, renewal periods, claims and loss histories, commission rates, fees, and premiums of its clients and prospective clients.

8.      USI is engaged in a highly regulated and highly competitive industry.  As a result, USI exercises reasonable measures to protect its substantial investment in goodwill and client relationships, including requiring certain employees to sign agreements containing narrowly drawn confidentiality, non-solicitation, and non-acceptance obligations when necessary and reasonable to protect its legitimate business interests.

9.      Ellis is an individual who resides at 3816 Indigo Run Drive, Henrico, Virginia 23233, and is regularly employed in the Commonwealth.  Ellis was one of the USI employees asked to sign the Agreement, containing confidentiality, non-competition, and non-solicitation obligations to protect USI's legitimate business interests.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action and over Ellis pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, USI and Ellis are residents of different states, and Ellis is a resident of the Commonwealth of Virginia.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, in that Ellis is a citizen of Henrico County, Virginia and a substantial part of the events giving rise to this action occurred in this judicial district.

## FACTS RELEVANT TO ALL COUNTS

12.     On or about April 30, 2007, Ellis accepted employment with Wells Fargo.  He was so employed when he entered into the Agreement, which became effective on December 17,

2017, the closing date of USI's purchase of the Wells Fargo entity.  Ellis worked for Wells Fargo and, later, for USI as a Commercial Risk Producer, assessing risks and exposure to formulate targeted insurance coverage solutions for clients and prospective clients on behalf of USI.  In this role, Ellis had substantial and frequent contact with USI clients and prospects, serving as the "face" of USI to those clients and prospects.

13.     USI supported Ellis by paying him compensation, providing him with an expense account to facilitate his efforts to develop new business for USI, and employing insurance professionals to service the business Ellis developed and maintained for USI.

14.     Ellis worked for USI until January 7, 2021, when he was terminated after a USI account manager discovered, and Ellis admitted to USI's Chief Human Resource Officer for the Mid-Atlantic region, that he had committed acts constituting misconduct.  Prior to his departure, Ellis had worked out of USI's Glen Allen, Virginia office, identifying, cultivating, and maintaining relationships with clients who would rely upon USI's expertise to utilize USI for their insurance purchasing, servicing, and related needs.

15.     After his termination, Ellis accepted employment with one of his USI brokerage clients, Safford Automotive Group ("Safford"), as its Director of Benefits.  Safford is located in Springfield, Virginia, which is a two-hour drive from Ellis's former USI office in Glen Allen. USI learned of Ellis's new position when the producer who took over the Safford account upon Ellis's departure called on the dealership and reached Ellis.  Ellis assured his USI successor that he would not divert Safford insurance business (or any other USI business) to another brokerage.

16.     Ordinarily, when a USI client retains USI as its insurance broker replacing a former broker, that retention is evidenced by a "broker of record letter" or "BOR," issued by the client's insurer at the client's request.  The BOR notifies the client's former broker, if any, of the

retention of USI as its new broker of record, and the client need not contact the former broker. Likewise, USI receives BORs notifying it when a USI client has moved its business and changed its broker of record from USI to another broker.  For USI and other brokerages, the first notice of loss of an insurance client may be the receipt of a BOR, which itself does not necessarily reflect the identity of the new brokerage to which a client has transferred its business.

## Ellis's Obligations Pursuant to His USI Employment Agreement

17.     Section 2.3 of the Agreement precluded Ellis from performing any activities or service that would interfere with or present a conflict of interest concerning his USI employment. *See* Agreement, Ex 1.

18.     In Section 2.4 of the Agreement, Ellis acknowledged his duty of loyalty and his commitment to use his best efforts to faithfully, diligently, and completely perform his duties and responsibilities in furtherance of USI's business.

19.     Section 8.2 of the Agreement set out Ellis's obligations relating to Confidential Information (as defined in the Agreement) of USI.  This Section clarified that the Confidential Information was the property of USI, and that Ellis was obligated to maintain the confidentiality of, and not disclose or use, USI's Confidential Information during the term of the Agreement and thereafter.

20.     Sections 8.5 and 8.6 of the Agreement detailed Ellis's obligations relating to Clients and Active Prospective Clients (each as defined in the Agreement).

21.     Sections 8.5(a) and 8.6(a) of the Agreement prohibited Ellis immediately upon the end of his employment and for a period of two (2) years thereafter, from, directly or indirectly, soliciting, selling, providing, or accepting any request to provide services to, consulting for, signing or accepting a broker of record letter with, or inducing the termination, cancellation, or

non-renewal of any USI client that Ellis managed or regularly serviced on behalf of USI and/or about which Ellis obtained Confidential Information on behalf of USI, in the two (2) years prior to his termination of employment, wherever such clients were located.

22.     Sections 8.5(b) and 8.6(b) also prohibited Ellis, for a period of six (6) months after the end of his employment, from engaging in the same activities (including, but not limited to, diverting or attempting to divert services away from USI or signing a broker of record letter) with respect to certain of USI's prospective clients designated in the Agreement as "Active Prospective Clients," about which Ellis had solicited or obtained Confidential Information in his capacity as a USI employee during the six (6) months prior to his departure.

23.      Section 8 of the Agreement contains restrictive covenants that are reasonable and narrowly tailored to protect USI's legitimate protectable interests, including, without limitation, its interests in its goodwill, and that are neither overbroad nor overreaching (in terms of scope, geography, duration, or otherwise).

24.     Pursuant to Section 8.8 of the Agreement, the restrictive covenants in Section 8 are deemed extended during any periods of breach by Ellis.

25.     Ellis specifically acknowledged that these provisions of the Agreement are "reasonable and necessary to protect [USI's] Confidential Information and Goodwill," and that his breach of any of his obligations under Section 8 would "result in irreparable harm to the business of [USI] for which money damages alone would not be adequate compensation." *Id.* at p. 2 ("Recitals") and §§ 8.9, 10(d).

### Ellis's Non-Contractual Obligations Owed to USI

26.     During Ellis's employment at USI, he owed certain duties to USI, including, but not limited to, duties of loyalty and fidelity.

7

27.     By virtue of his duty of loyalty, Ellis was prohibited from acting in a disloyal manner and was required at all times to act in accordance with the best interests of USI.

28.     Ellis's common law duty of loyalty meant that he could not divert business from USI during his employment with USI, and any business that came to USI would be accepted or referred to another brokerage in accordance with USI policy and practices at USI's option.

29.     During Ellis's employment by USI, he knew he was required at all times to conduct all insurance related business for clients through USI, and knew that he was prohibited from doing so in a manner that circumvented his obligations to USI.

**Ellis's Diversion of Clients, Acceptance of Kickbacks, and Service of Non-USI Accounts**

30.     At or about the time of Ellis's termination, USI learned that Ellis had diverted the business of numerous USI Clients and Active Prospective Clients, which he did not place through USI but sent to one of USI's direct competitors, Maple Hill Benefits.  Ellis left behind electronic evidence indicating to USI that he had continued to service some or all of those accounts with Brandon Chisholm, President of Maple Hill Benefits.

31.     Section 3.2(e) of the Agreement expressly stated that no commission would be paid to Ellis on accounts that did not generate, or were not expected to generate, annual net commissions and fees in excess of ten thousand dollars ($10,000.00) ("Small Employee Accounts").  This was not a new development upon USI acquiring Wells Fargo.  Wells Fargo had such a rule in place since at least 2016, and its producers (including Ellis) were not to work with Small Employee Accounts.

32.     In most cases, USI retained a significant percentage of the commission income generated by Small Employee Accounts that came to USI by servicing them through its Small Employee Benefits Unit (the "Small EB Unit") or referring them to USI-approved brokerages

8

with which USI had referral relationships and contractual agreements.

33.     Ellis's manager at USI made it clear to Ellis and the other producers in the Glen Allen office that they were not to prospect such accounts, much less refer them out or work with a competitor to service them.  Small Employee Accounts were to be sent to USI's Small EB Unit.   Although USI would have declined to service many of these accounts even through its Small EB Unit, USI received significant commission splits on Small Employee Accounts it referred out to brokers with which it contracted.

34.     Maple Hill Benefits was not an approved brokerage with which USI had such a referral relationship, and by placing these USI Clients and Active Prospective Clients with Maple Hill Benefits, Ellis received as "referral fees" payments that should have been received by USI as commission splits with its business partner.  Thus, USI suffered a financial loss on each diverted Small Employee Account and the future policies each represented, despite the fact that Ellis himself would not have been permitted to accept those accounts for servicing on USI's behalf.

35.     Upon information and belief, Ellis also received commission splits with Mr. Chisholm and others to whom he referred and with whom he serviced such accounts.  Ellis's activities in that regard, undertaken using his USI email account, subjected USI to potential liability for Ellis's acts or omissions in connection with his unauthorized work.

36.     Upon information and belief, Ellis's diversion of business away from USI benefited him in an amount in excess of $75,000 in referral fees paid to him directly by Maple Hill Benefits and others over several years, separate and apart from the commission-based compensation he received from USI.

37.     By engaging in this side business, Ellis deprived USI of direct income to its Small Employee Benefits Unit or commission splits and goodwill from its preferred referral brokerages

to which USI would have sent Small Employee Accounts produced by Ellis that USI declined to service.

38.      Upon information and belief, Ellis intentionally circumvented the USI Small Employee Benefits Unit procedure in these or other ways, in violation of his duty of loyalty and in breach of the Agreement, since at least December of 2017. Electronic information found after Ellis's termination indicate some 90 Small Employee Accounts that Ellis serviced outside USI during that time.

39.      While employed by USI, Ellis actually competed with USI by soliciting, accepting, and servicing Small Employee Accounts, and then placing that business through Maple Hill Benefits, rather than through USI. The diversion of this business resulted in lost income and goodwill valued in excess of $75,000 to USI, as well as the misappropriation of goodwill to the benefit of Ellis and Maple Hill Benefits, and it constitutes unfair competition against USI.

40.      Prior to his termination, Ellis also diverted Small Employee Accounts and other, more significant accounts to his friend Barbara Bailey, who had left Wells Fargo to join a competitor in July of 2017.

41.      Ellis had an obligation to act faithfully and in the best of interest of USI, his employer, but his actions described herein rendered him a faithless servant.

### Ellis's Post-Termination Parking of Business

42.      While still employed by USI, Ellis took over several important USI Client accounts that previously had been serviced by his friend and departing Wells Fargo employee, Barbara Bailey.

43.      Upon information and belief, Ellis and Ms. Bailey were, and still remain, close

personal friends.

44.     After being terminated from USI and accepting employment as Employee Benefit Director and corporate project manager for USI's client Safford Automotive Group ("Safford), Ellis continued to cultivate relationships with his former USI clients.

45.     After Ellis's January 2021 termination, and after the July 2021 expiration of restrictive covenant obligations limiting the competitive activities of Ellis's friend and former Wells Fargo colleague, Barbara Bailey, USI began receiving BORs notifying it of its loss of clients to the competing brokerage that employed Ms. Bailey.

46.     Upon information and belief, after his termination from USI, Ellis undertook a surreptitious campaign to transfer and "park" his former USI clients with Ms. Bailey and her employer, Towne Benefits.  The former clients would remain parked with Ms. Bailey and her employer until such time as Ellis could return to working as an insurance producer.

47.      Additionally, upon information and belief, Ellis has engaged in efforts to park other USI Clients he serviced with Ms. Bailey and Towne as he awaits expiration of his restrictive covenants.

48.     Upon information and belief, Ellis has been assisting Ms. Bailey to move the USI Clients he began servicing upon her departure from Wells Fargo, as well as the other USI Clients for which he was responsible, to Towne Benefits, causing those USI Clients to terminate their ongoing contracts or relationships with USI.

49.     Both Ms. Bailey and her employer, Towne Benefits, are direct competitors of USI.

50.     Upon information and belief, Ellis undertook these actions in an effort to run out the terms of the obligations he owes to USI pursuant to the Agreement, and he intends to leave

Safford to begin servicing the USI Clients thereafter.

51.     Ellis has been successful in his efforts to divert at least two (2) significant USI Clients to Ms. Bailey and Towne Benefits.  They are: Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging.  Together these accounts represent an initial combined loss to USI of approximately $119,000, leaving aside the future losses they represent.

52.     Ellis competed with USI by using USI Confidential Information to solicit USI Clients to move their business to Ms. Bailey and Towne Benefits and by inducing the termination, cancellation, or non-renewal of those Clients' services with USI. This interference and diversion of business resulted in losses in excess of $75,000.00 to USI, as well as the misappropriation of goodwill, and constitutes unfair competition against USI.

## COUNT I
**(Breach of Employment Agreement: Non-Solicitation of USI Clients--Towne Benefits)**

53.     USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

54.     The Agreement constitutes a valid and binding contract between USI and Ellis with restrictions that survived the termination of his USI employment.

55.     USI has performed all of its obligations under the Agreement.

56.     Ellis breached his contractual obligations in Section 8.5 of the Agreement by, *inter alia,* directly or indirectly, soliciting and/or inducing the termination, cancellation, and/or non-renewal of one or more USI Clients, including, without limitation, Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging.

57.     Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging both had specific, existing contractual relationships with USI, and USI had a reasonable expectation that those contractual relationships (the insurance coverages) would be

renewed annually.

58.     As a direct and proximate result of Ellis's breach of the Agreement, USI has suffered injuries, including the loss of revenues from Client accounts that have moved significant brokerage business, having a value of not less than an immediate $119,000. This amount will continue to grow at an increasingly rapid pace in the future, as coverage lines are renewed, new lines are added, and insurance premiums increase.

59.     By reason of the foregoing, USI is entitled to recover compensatory damages for Ellis's breach of contract, in an amount to be determined at trial, in excess of the $119,000 in losses of which USI is aware to date.  More importantly, the loss of business relationships with Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging was a loss of USI goodwill that caused irreparable and incalculable harm, because had Ellis honored his obligation to USI, these Clients would very likely have remained with USI for additional years, and/or purchased additional insurance products and/or coverages, and/or referred other clients to USI.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $119,000; prejudgment interest from the date of breach to the date of entry of judgment at the rate permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of the costs of bringing this action; injunctive relief in its favor and against Defendant Dwight Ellis II, enjoining him from engaging in activities described in Section 8.5(a) of the Agreement for a period of two (2) years from the date of entry of the Order, and enjoining him from using USI's Confidential

Information to engage in any activity described in Section 8.2 of the Agreement for a period of five (5) years from the date of entry of the Order; and granting such other and further relief as this Honorable Court deems just and proper.

**COUNT II**
**(Breach of Employment Agreement: Non-Solicitation of USI**
**Clients and Active Prospective Clients—Maple Hill Benefits)**

60.     USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

61.     The Agreement constitutes a valid and binding contract between USI and Ellis.

62.     USI has performed all of its obligations under the Agreement.

63.     Ellis breached his contractual obligations in Sections 2.3, 2.4, 8.2, and 8.5 of the Agreement by, *inter alia,* diverting the business of numerous USI Clients and Active Prospective Clients to a USI competitor, Maple Hill Benefits, with whom Ellis also worked for several years in violation of those same obligations.

64.     Upon information and belief, Ellis accepted in excess of $75,000 in referral fees directly from Maple Hill Benefits through his actions in diverting business away from USI.

65.     As a direct and proximate result of Ellis's breach of the Agreement, USI has suffered injuries, including the loss of revenues from Clients and Active Prospective Clients accounts that moved significant brokerage business, having a value of not less than $75,000.

66.     By reason of the foregoing, USI is entitled to recover compensatory damages for Ellis's breach of contract, in an amount to be determined at trial, in excess of the $75,000 in losses of which USI is aware to date.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against

Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $75,000; prejudgment interest from the date of breach to the date of entry of judgment at the rate permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of the costs of bringing this action; and granting such other and further relief as this Honorable Court deems just and proper.

<u>COUNT III</u>
(Breach of Employment Agreement: Covenant of Good Faith and Fair Dealing)

67.   USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

68.   A contractual relationship existed between USI and Ellis in the form of the Agreement, inherent in which was a covenant of good faith and fair dealing.

69.   Ellis breached his duty of good faith and fair dealing through, *inter alia*, his (a) directly or indirectly, soliciting or inducing the termination and non-renewal of Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging, Clients of USI; and (b) diverting the business of some ninety (90) USI Clients and Active Prospective Clients to a USI competitor.

70.   Ellis has benefited and will continue to benefit from his wrongful conduct in violation of his duties to USI pursuant to the implied covenant of good faith and fair dealing in his Agreement.  Ellis's actions destroyed the value of the Agreement to USI, which has been deprived of the benefit of its bargain.

71.   By reason of the foregoing, USI suffered economic injury as the result of Ellis's breach of his duty to USI of good faith and fair dealing, and USI is entitled to recover compensatory damages from Ellis in an amount to be determined at trial, but not less than

15

$119,000.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $119,000; prejudgment interest from the date of breach to the date of entry of judgment at the rate permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of the costs of bringing this action; injunctive relief in its favor and against Defendant Dwight Ellis II, enjoining him from engaging in activities described in Section 8.5(a) of the Agreement for a period of two (2) years from the date of entry of the Order, and enjoining him from using USI's Confidential Information to engage in any activity described in Section 8.2 of the Agreement for a period of five (5) years from the date of entry of the Order; and granting such other and further relief as this Honorable Court deems just and proper.

## COUNT IV
### (Breach of Duty of Loyalty)

72.     USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

73.     As a USI employee, Ellis owed a fiduciary duty of loyalty to USI during his employment.

74.     Subsumed within Ellis's duty of loyalty to USI is the more specific duty that Ellis not compete with USI during his employment.

75.     Ellis breached his duty of loyalty by, *inter alia,* diverting the business of numerous USI Clients and Active Prospective Clients to a USI competitor, Maple Hill Benefits, while employed by USI, and by working with that competitor to service accounts he referred.

16

76.     Upon information and belief, Ellis earned in excess of $75,000 in referral fees and commission splits directly from Maple Hill Benefits through his actions in diverting business away from USI.

77.     As a direct and proximate result of Ellis's breach of his duty of loyalty, USI has suffered injuries, including the loss of revenues from Clients and Active Prospective Clients accounts that moved significant brokerage business, having a value of not less than $75,000.

78.     By reason of the foregoing, USI is entitled to recover compensatory damages for Ellis's breach of his duty of loyalty, in an amount to be determined at trial, in excess of the $75,000 in losses of which USI is aware to date.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $75,000; prejudgment interest from the date of breach to the date of entry of judgment at the rate permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of the costs of bringing this action; and granting such other and further relief as this Honorable Court deems just and proper.

**COUNT V**
**(Unjust Enrichment)**

79.     USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

80.     USI supported Ellis by paying him a salary, providing him with an expense account to facilitate his efforts to develop new business for USI, and employing insurance professionals to service the business Ellis developed and maintained for USI.  Pursuant to

Sections 2.3 and 2.4 of the Agreement, all services Ellis performed were to be performed for the benefit of USI and in furtherance of USI's business. He was precluded from performing any activities or services that would interfere with or present a conflict of interest.

81.     Even so, Ellis used the resources that USI provided to divert the business of numerous USI Clients and Active Prospective Clients to a USI competitor, Maple Hill Benefits, while he was employed by USI.  Upon information and belief, in some or all of these cases, Ellis continued to service the Clients he diverted to Maple Hill Benefits, earning commission splits in addition to referral fees.

82.     Upon information and belief, Ellis earned well in excess of $75,000 in referral fees and commission splits directly from Maple Hill Benefits through his actions in diverting business away from USI.

83.     As a direct and proximate result of Ellis's actions, he has been unjustly enriched in the referral fees and commission splits received on USI Clients and Active Prospective Clients accounts he diverted to a USI competitor, and fraudulent commissions, together having a value of not less than $75,000.

84.     By reason of the foregoing, USI is entitled to recover compensatory damages, including but not limited to disgorgement of all referral fees and commission splits received, which unjustly enriched Ellis or other he assisted, in an amount well in excess of $75,000 to be determined at trial.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $75,000; prejudgment interest from the date of breach to the date of entry of judgment at the rate

18

permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of its costs of bringing this action; and granting such other and further relief as this Honorable Court deems just and proper.

## COUNT VI
### (Tortious Interference with Contractual Relations)

85.     USI hereby incorporates by reference, as if fully set forth herein, all of the allegations contained in the preceding numbered paragraphs.

86.     After Ellis's departure USI uncovered electronic evidence reflecting that he had continued to work with Barbara Bailey after her departure from USI in 2017.  Just months prior to his termination, Ellis utilized USI email to steer then-current USI clients to work with Ms. Bailey, in one instance assisting her to work with a USI client to obtain an insurance quote competitive with that obtained by USI.  The client left USI and, upon information and belief, took its business to Ms. Bailey at Towne Benefits.

87.     More recently two other clients, Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging were Clients of USI serviced by Ellis.  Each had specific, existing contractual relationships with USI during the last two years of Ellis's employment with USI.  These accounts were among the largest Ellis handled for USI, and they generated the largest commissions he earned.

88.     USI and Ellis fully expected that Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging would renew insurance policies with USI. Instead, Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging were solicited and/or induced to terminate, cancel, and/or non-renew their policies, directly or indirectly, by Ellis.

89.     Ellis was aware of Colonial Ford Truck Sales and Berger and Burrow Enterprises

19

d/b/a Dynamic Mobile Imaging's specific, existing contractual relationships with USI, and was being paid to service and maintain both of them when he left USI's employ.  Ellis also was aware that both USI and each of Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging expected to renew the insurance coverages.

90.     Upon information and belief, notwithstanding his contractual obligations and the parties expectations, Ellis intentionally and wrongfully used his knowledge to undertake to induce Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging to terminate their contractual relationships with USI.

91.     Ellis's actions destroyed or attempted to destroy the value of the Agreement to USI, which deprived USI of the benefit of its bargain.

92.     Ellis utilized and benefited from and, if he waits out his post-termination obligations, will continue to benefit from, his willful, malicious, intentional, and wrongful conduct, which included his misuse of USI's Confidential Information to intentionally and wrongfully induce Colonial Ford Truck Sales and Berger and Burrow Enterprises d/b/a Dynamic Mobile Imaging to terminate their contractual relationships with USI.

93.     By reason of the foregoing, USI suffered economic injury as the result of Ellis's interference, and USI is entitled to recover compensatory damages from Ellis in an amount of USI's lost profits to be determined at trial, in excess of $119,000, plus punitive damages based on Ellis's willful and wanton conduct in an amount to be determined at trial.

94.     To date, USI has not confirmed other USI Clients who terminated or may terminate their relationships with USI to contract with Ellis or a third party as a result of Ellis's actions; however, USI expects that in the absence of injunctive relief prohibiting Ellis from engaging in the activities reported and described above, more such efforts are being undertaken

20

and could succeed.  In that event, USI would suffer losses related to the loss of its goodwill, Clients, and the benefits of its contractual relationships.

95.     Unless Ellis is enjoined from, directly or indirectly, violating Sections 8.2 and 8.5 of the Agreement to interfere with USI's contractual relationships, USI is likely to suffer irreparable harm, as acknowledged by Ellis at Section 10 of the Agreement.

WHEREFORE, Plaintiff USI Insurance Services, LLC respectfully requests that this Honorable Court enter its Order directing the entry of judgment in its favor and against Defendant Dwight Ellis II, awarding it: compensatory damages in an amount in excess of $119,000; exemplary and punitive damages in an amount to be determined at trial; prejudgment interest from the date of breach to the date of entry of judgment at the rate permitted by law; post-judgment interest at the legal rate from the date of entry of judgment until such time as the judgment is paid and satisfied in full; reimbursement of the costs of bringing this action; and granting such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

USI INSURANCE SERVICES, LLC

By counsel,
        /s/
Lauri Elizabeth Cleary, VSB No. 35252
LERCH, EARLY & BREWER, CHTD.
7600 Wisconsin Avenue, Suite 700
Bethesda, MD 20814
(301) 657-0176 (Phone)
(301) 347-1792 (Facsimile)
lecleary@lercherly.com

*Counsel for USI Insurance Services, LLC*