IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA – RICHMOND DIVISION

| | |
|---|---|
| USI INSURANCE SERVICES, LLC, )<br>)<br>        **Plaintiff,** )<br>)<br>v. )<br>)<br>DWIGHT DREW ELLIS, II, )<br>)<br>        **Defendant.** )<br>                              ) | Civil Action No. 3:21-cv-797 |

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S PARTIAL MOTION TO DISMISS COMPLAINT**

Pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and Local Rule 7, Defendant Dwight Drew Ellis, II ("Defendant" or "Mr. Ellis") submits the following Memorandum in Support of its Motion to Dismiss filed in response to a complaint filed by Plaintiff USI Insurance Services, LLC ("Plaintiff" or "USI"). The Complaint should be dismissed in part for its failure to assert cognizable claims, as explained below.

## I.
## OVERVIEW

USI, one of the largest insurance brokerage and consulting firms in the world, has overstated its claims against its former employee, Mr. Ellis. At the crux of USI's Complaint is Mr. Ellis's Employment Agreement, *see* Compl. Ex. 1, which contains restrictive covenants with respect to clients and active prospective clients. USI claims that Mr. Ellis breached his Employment Agreement by (1) allegedly causing at least two clients to terminate their insurance brokerage contracts with USI and (2) allegedly diverting small businesses that USI did not want as clients to a third party brokerage firm that paid Mr. Ellis a referral fee. Indeed, these assertions amount to nothing more than a simple breach of contract claim—albeit supported by facts that fail to rise above the level of speculation.

1

As the Court will find, however, USI has inappropriately stretched these contractual claims into six different counts, several of which must be dismissed as a matter of law, as summarized below:

- Count III, Breach of Contract: Covenant of Good Faith and Fair Dealing, must be dismissed for asserting a claim that is not recognized under Virginia law;

- Count V, Unjust Enrichment, requires dismissal because it cannot stand in the face of an express contract; and

- Count VI, Tortious Interference with Contractual Relations, not only violates Virginia's economic loss doctrine, but also fails to plead facts sufficient to establish the required elements of interference with a business expectancy through improper methods, as well as to sustain a claim for punitive damages.

The Court should eliminate these claims from the Complaint to prevent USI from grossly exceeding the limits of its contractual claims, as explained further below.

## II.
## STANDARD OF REVIEW

A motion to dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). The United States Supreme Court established the standard of review for Rule 12(b)(6) motions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), where the Court explained that a plaintiff must provide more than conclusions "and a formulaic recitation of the elements of a cause of action." *Id*. The majority opinion noted that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (internal citations omitted); *see also, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").

2

In considering a motion to dismiss, the Court need not accept unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Federal courts employ a "two-pronged approach" to analyze pleadings under this standard. First, the trial court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" because "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

The Court must be wary of allegations couched by the phrase "upon information and belief," which fail to meet the pleading standards of *Iqbal* and *Twombly*. Indeed, the federal courts "routinely reject conclusory recitals couched upon information and belief." *Lilley v. Wells Fargo, N.A. (In re Lilley)*, Nos. 10-81078C-13D, 10-9110, 2011 Bankr. LEXIS 1406, at *7 (Bankr. M.D.N.C. Apr. 12, 2011) (collecting cases, *see, e.g.*, *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009) (dismissing a defamation claim couched with "[o]n information and belief"); *Essex Ins. Co. v. Miles*, No. 10-3598, 2010 U.S. Dist. LEXIS 128888, at *2–*3 (E.D. Pa. Dec. 3, 2010) ("[R]eliance . . . 'on information and belieffw cannot transform legal conclusions into plausible factual allegations.'"); *Servicios Especiales Al Comercio Exterior, S.C. v. Johnson Controls, Inc.*, No. 08-CV-1117, 2010 U.S. Dist. LEXIS

3

4324, at *5 (E.D. Wis. Jan. 20, 2010) (finding an allegation framed with "[u]pon information and belief" amounted to "a naked assertion because it simply states the legal conclusion that a joint venture exists without any supporting factual allegations"); *In re Gluth Bros. Constr., Inc.*, 424 B.R. 368, 377 (Bankr. N.D. Ill. 2009) (statement made upon information and belief was merely "a formulaic recitation of the element").

Thus, while FRCP Rule 8 "does not require 'detailed factual allegations[,]' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Were it otherwise, Fed. R. Civ. P. 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the Complaint." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991).

## III.
## ARGUMENT

### A. Plaintiff Has No Cognizable Cause of Action Under the Covenant of Good Faith and Fair Dealing Under Virginia Law (Count III).

It is well established that Virginia does not recognize a cause of action for violations of the "covenant of good faith and fair dealing." *Middle E. Broad. Networks, Inc. v. MBI Glob., LLC,* No. 1:14-cv-01207-GBL-IDD, 2015 U.S. Dist. LEXIS 98484, at *12 (E.D. Va. July 28, 2015). Mr. Ellis does not dispute that "every contract contains an implied covenant of good faith and fair dealing," *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va 2009) (citations omitted). However, this implied covenant "simply bars a party from 'acting in such a manner as to prevent the other party from performing his obligations under the contract.'" *De Vera v. Bank of Am., N.A.*, Civil Action No. 2:12cv17, 2012 U.S. Dist. LEXIS 87840, *8 (E.D. Va. June 25, 2012) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175,

4

182 (4th Cir. 2000)).   This fails to create an independent cause of action separate and apart from a basic breach of contract claim.

In this case, Plaintiff alleges that Mr. Ellis breached this "duty of good faith and fair dealing" through his alleged solicitation of and alleged interference of USI's contracts with two USI brokerage clients and through his alleged diversion of business away from USI of clients and active prospective clients to a competitor.  *See* Compl. ¶ 69.  Plaintiff asserts that this is an "implied covenant" that Mr. Ellis allegedly breached.  *See* Compl. ¶ 70.  Unfortunately for USI, Virginia does not recognize this implied covenant as providing another legal basis for USI to obtain the relief it seeks, which is identical to the relief sought under Plaintiff's first count for breach of contract.  This tactic simply demonstrates USI's creative attempts to assert as many theories as possible of liability against Mr. Ellis, even if they are not grounded in the law.

Count III of the Complaint should, therefore, be dismissed with prejudice.

**B.  Plaintiff Has Failed to Adequately Plead a Claim of Unjust Enrichment Because Plaintiff Has Also Alleged the Existence of an Express Contract (Count V).**

Plaintiff must plead the following elements to establish a claim of unjust enrichment: (1) Plaintiff conferred a benefit on Mr. Ellis; (2) Mr. Ellis knew of the benefit and should reasonably have expected to repay Plaintiff; and (3) Mr. Ellis accepted or retained the benefit without paying for its value.  *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008) (citations omitted).  However, it is well established in Virginia that "an action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures v. Swantz,* 846 F.2d 923, 926 (4th Cir. 1988); *see WRH Mortg., Inc. v. S.A.S. Associates,* 214 F.3d 528, 534 (4th Cir. 2000) ("Where a contract governs the relationship of the parties, the equitable remedy of… unjust enrichment does not lie.");  *Johnson v. D & D Home Loans Corp.*, Civil Action No. 2:07cv204, 2008 U.S. Dist. LEXIS 24114, at *22

(E.D. Va. Jan. 23, 2008) ("Unjust enrichment is a quasi-contractual remedy based upon the principles of equity and is inapplicable when there is an express contract between the parties.").

In this case, USI has alleged that Mr. Ellis had express contractual obligations found in his written Employment Agreement that obligated him to avoid any conflicts of interest (Section 2.3) and to abide by his duty of loyalty (Section 2.4). Specifically, USI claims that "[u]pon information and belief, Ellis intentionally circumvented the USI Small Employee Benefits Unit procedure in these or other ways, in violation of his duty of loyalty and in breach of the Agreement, since at least December 2017." *See* Compl. ¶ 38. Plaintiff asserts these facts in support of its breach of contract claim summarized in Count II. *See* Compl. ¶¶ 60–66.

Notwithstanding these allegations of express contractual duties, Plaintiff goes on to assert a separate claim, Count V, for unjust enrichment. *See* Compl. ¶¶ 79–84. However, the facts and remedies asserted in Plaintiff's unjust enrichment claim in Count V are virtually identical to Plaintiff's contractual claims found in Count II. These two counts cannot stand together, however, and must, instead, be pleaded in the alternative. *See Loudoun Country Day Sch. v. Ridenour*, 107 Va. Cir. 92, 95 (Loudoun 2021) ("If there is an express enforceable contract that resolves the issue, the unjust enrichment claim is not available. . . . '[U]nder Virginia . . . law, a plaintiff is permitted to plead equitable theories of relief such as unjust enrichment and *quantum meruit* as alternatives to contract recovery.'" (quoting *Mendoza v. Cederquist*, 2009 U.S. Dist. LEXIS 38264, at *3 (E.D. Va. May 6, 2009))). Accordingly, as pleaded, Plaintiff's unjust enrichment claim fails as a matter of law. *See Middle E. Broad. Networks, Inc. v. MBI Glob., LLC*, No. 1:14-cv-01207-GBL-IDD, 2015 U.S. Dist. LEXIS 98484, at *13-14 (E.D. Va. July 28, 2015) (where the parties conceded that an express contract existed, the plaintiff's unjust enrichment failed as a matter of law).

Plaintiff's Count V, therefore, should be dismissed with prejudice.

### C. Plaintiff Has Not Alleged Sufficient Facts Asserting Improper Methods to State a Cause of Action for Tortious Interference (Count VI).

For a tortious interference claim, a plaintiff must allege the following prima facie elements: "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Glass v. Glass*, 228 Va. 39, 51, 321 S.E.2d 69 (1984) (citation omitted); *see also Chaves v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (1985). The first element of a valid contract or a legitimate business expectancy, however, cannot be sustained where a plaintiff's "contract is terminable at will or involves only a contract or business expectancy." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 216, 754 S.E.2d 313, 318 (2014). After all, the law should only protect legitimate business interests. Indeed, "the extent of permissible interference that Virginia will allow increases as the degree of enforceability of a business relationship decreases." *See Duggin v. Adams*, 234 Va. 221, 226, 360 S.E.2d 832, 836 (1987).

Accordingly, in the context of a "terminable-at-will" contractual relationship, the plaintiff must also plead the existence of "improper methods" by the defendant. *See Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 559, 708 S.E.2d 867, 870 (2011) (quoting *Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987)); *see also Preferred Sys. Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 403-04, 732 S.E.2d 676, 688 (2012); *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414-15, 493 S.E.2d 375, 378-79 (1997). Such "improper methods" must be specifically pleaded to establish that the defendant intentionally and

improperly interfered with a plaintiff's contractual rights by causing a third party not to enter into a contract that is merely at-will. Vague allegations that lack specificity cannot stand.

For example, in *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483 (E.D. Va. 2003), this Court reviewed a tortious interference claim on a Rule 12(b)(6) motion to dismiss and determined that the subject contract was terminable-at-will. The Court ruled that, as pleaded, the plaintiff failed to identify the specific customer contracts in which the defendant allegedly meddled, as well as exactly how, when, and/or where the defendant interfered. These pleading deficiencies supported this Court's dismissal of the plaintiff's tortious interference claim under Rule 12(b)(6), notwithstanding the fact that the plaintiff had also pleaded that the defendant made defamatory statements. *See id.* at 500–01.

In this case, USI pleads the existence of contracts that are terminable-at-will. USI claims it "fully expected that [Colonial Ford[ and [DMI] would renew insurance policies with USI." *See* Compl. ¶ 88. The Complaint, however, lacks any allegations that such renewal constituted a legitimate contractual expectation upon which USI could reasonably rely. It has not been pleaded, for example, that the contract would automatically renew. There are no facts pleaded to support the conclusion that USI "fully expected" a contract renewal from these two clients. The Complaint lacks any facts, for example, of whether either of these two clients gave any indication to USI that they would be renewing their contractual relationships. Instead, USI relies solely on its self-serving conclusion that they expected these clients to renew their contracts. This fails to establish an adequate business expectancy.

Because the alleged contracts at issue were terminable-at-will, USI must also allege that Mr. Ellis engaged in improper methods. *See, e.g.*, *Dunn*, 281 Va. at 559, 708 S.E.2d at 870. However, USI merely asserts conclusory allegations about Mr. Ellis's alleged interference.

8

Although USI has identified two clients with whose USI contracts Mr. Ellis allegedly interfered, i.e., Colonial Ford and DMI, USI has also identified an unnamed "USI client" who allegedly "left USI and, upon information and belief, took its business to Ms. Bailey at Towne Benefits." *See* Compl. ¶ 86. In failing to identify exactly which clients Mr. Ellis allegedly steered away from USI, Plaintiff offers mere speculation as to Defendant's alleged interference. This claim, therefore, cannot survive dismissal, just as the claim in *Bay Tobacco* was dismissed for failing to identify the diverted client. *See Bay Tobacco*, 261 F. Supp. 2d at 500–01.

Further, USI contends that "[u]pon information and belief, notwithstanding his contractual obligations and the parties' expectations, Ellis intentionally and wrongfully used his knowledge to undertake to induce [Colonial Ford] and [DMI] to terminate their contractual relationships with USI." *See* Compl. ¶ 89. USI further generally alludes to Mr. Ellis's alleged "misuse of USI's Confidential Information." *See* Compl. ¶ 90. However, these facts are conclusory and are insufficient to support Count VI.

Importantly, USI's over reliance on the phrase "upon information and belief," cannot be accepted as a substitute for asserting factual allegations that comport with *Iqbal* and *Twombly*. This Court has properly dismissed such allegations at the Rule 12(b)(6) stage. For example, in *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009), the Eastern District of Virginia reviewed an allegation that "[o]n information and belief" the defendant "made false statements to the [third-party] regarding [plaintiff's] role in the . . . incident and that [defendant] falsely stated to [plaintiff] employees that [plaintiff] was solely responsible for the incident and was therefore an irresponsible contractor." *Id.* at 619. In *Skillstorm*, this Court ruled that such allegations were devoid of facts, namely "a speaker [identity], the substance of the statement, when the statement was made, and why the statement is defamatory. . . . In short,

9

[plaintiff] alleges no facts that would move this defamation claim from possible to plausible."

*Id.*

Here, USI's attempts to assert the required element of "improper methods" is completely framed by the phrase "upon information and belief," which cannot transform empty allegations into plausible facts. Specifically, USI fails to identify the "Confidential Information" that was allegedly misused by Mr. Ellis pursuant to his Employment Agreement. USI further fails to explain how, when, and/or where Mr. Ellis allegedly misused this Confidential Information to interfere with the Colonial Ford and DMI contracts. Of course, there are no facts whatsoever regarding other unnamed clients with whom Mr. Ellis allegedly interfered.

Because USI cannot prove facts it does not allege, the Court should find that Count VI fails to state a claim upon which relief may be granted and dismiss it, with prejudice.

### D.     The Economic Loss Doctrine Bars Plaintiff from Recovering Both in Contract and in Tort (Count VI).

The economic loss doctrine limits the relief that Plaintiff can seek in its Complaint, which prays for both contract and tort remedies for the same conduct.

> Under the economic loss rule in Virginia, parties that sue for purely economic losses under contract may only recover under the requisite contract because "losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610 (2004). Tort law does not "compensate parties for losses suffered as a result of a breach of duties assumed only by agreement. That type of compensation necessitates an analysis of the damages which were within the contemplation of the parties when framing their agreement. It remains the particular province of the law of contracts." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 5 Va. Law Rep. 1040 (1988) (citing *Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514 (1983)).

*Mobilization Funding, L.L.C. v. W.M. Jordan Co.*, No. 4:18-CV-72, 2018 U.S. Dist. LEXIS 202748, at *12-13 (E.D. Va. Nov. 28, 2018). Further, "punitive damages fall solely within the

10

realm of tort actions, and cannot be maintained in cases for breach of contract, absent allegations and proof of oppression, wantonness or malice." *RMA Lumber, Inc. v. Pioneer Mach., LLC*, No. 6:08-cv-00023, 2009 U.S. Dist. LEXIS 108346, at *38 (W.D. Va. Nov. 19, 2009) (citing 5C Mich. Jur., Damages, § 65).  In other words, the Court must recognize the fundamental differences between tort and contract claims based on the source of the duties between the parties.  *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc*., 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). On the one hand, contract law places the injured party in the position they would have occupied if the parties performed their contractual duties. On the other hand, tort law permits recovery for losses suffered based on the breach of a duty imposed by common law to protect the broader interests of society, and to punish the defendant through punitive damages. *Kamlar Corp. v. Haley*, 224 Va. 699, 706, 299 S.E.2d 514, 517 (1983); *see infra*, Pt. III.E. (discussion on punitive damages). Simply put, tort law is not available to compensate USI for its losses stemming from Mr. Ellis's alleged breach of any duties that he assumed only through his employment agreement.  *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 360-61, 699 S.E.2d 483, 488-89 (2010).  Doing so would ignore and avoid the rights and remedies granted by the Employment Agreement, including the risks of economic loss both parties previously allocated for themselves, and would result in a windfall for USI.

      As pleaded, USI bases its tortious interference claim on facts that are nearly identical to the facts found in its contract claim found in Count I.  USI claims in Count I that Mr. Ellis breached Section 8.5 of his employment agreement by allegedly "directly or indirectly, soliciting and/or inducing the termination, cancellation, and/or non-renewal of one or more USI Clients," namely Colonial Ford and DMI. USI claims that they lost the value of at least $119,000 from the loss of these business relationships.  *See* Compl. ¶ 56.  Similarly, in Count VI, USI asserts that

11

Mr. Ellis "solicited and/or induced to terminate, cancel, and/or non-renew their policies, directly or indirectly, by Ellis." *See* Compl. ¶ 88. Further, in Count VI, while USI alleges more facts related to Mr. Ellis's former coworker Barbara Bailey, USI ultimately concludes "upon information and belief" that Mr. Ellis "induce[d]" Colonial Ford and DMI to terminate their contracts with USI. *See* Compl. ¶ 90. USI also complains of this behavior "notwithstanding his contractual obligations and the parties' expectations." *See id.* Simply put, these allegations all arise from the same fact pattern.

Although Count VI omits reference to Section 8.5 of the employment agreement, it fails to identify any facts that establish a source of duty for Mr. Ellis to refrain from his alleged interference with Colonial Ford and DMI separate and apart from his employment agreement. In fact, USI explains that Mr. Ellis's actions "destroyed or attempted to destroy the value of the [Employment] Agreement to USI, which deprived USI of the benefit of its bargain." *See* Compl. ¶ 91. In effect, USI has conceded that there is no independent basis for Mr. Ellis's liability for this alleged activity separate and apart from the obligations expressly stated in his Employment Agreement. Accordingly, USI cannot seek tort remedies to compensate for its losses. Permitting USI to do so would enable it to otherwise manufacture an array of tort claims out of a simple breach of contract claim, which wholly contradicts the purpose of the economic loss doctrine.

Thus, the Court should dismiss Count VI as a matter of law and with prejudice because it violates the economic loss doctrine.

### E. Plaintiffs' Punitive Claims Are Nothing More than Conclusory Allegations/Formulaic Recitation of the Legal Standard, Thereby Failing to Meet the Pleading Standards of Iqbal/Twombly (Count VI)

Consistent with the economic loss doctrine, Virginia requires proof of an "independent, willful tort, beyond the mere breach of a duty imposed by contract, as a predicate for an award of

punitive damages, regardless of the motives underlying the breach." *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983). It is well established that "punitive damages fall solely within the realm of tort actions, and cannot be maintained in cases for breach of contract, absent allegations and proof of oppression, wantonness or malice." 5C Mich. Jur., Damages, § 65 (2021). Indeed, punitive damages are not permitted for purposes of compensating a plaintiff's loss; rather, they are to "warn others and to punish the wrongdoer, if he has acted wantonly, oppressively or with such malice as to evince a spirit of malice or criminal indifference to civil obligations." *Giant of Va. v. Pigg*, 207 Va. 679, 685–86, 152 S.E.2d 271 (1967). The thrust of *Iqbal* and *Twombly* requires that punitive damages be pleaded with sufficient facts to show reckless or callous indifference to the plaintiff's rights. *See Iqbal*, 556 U.S. at 678. A "'formulaic recitation' alone is not sufficient to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Brickey v. Hall*, Civil Action No. 1:13CV00073, 2014 U.S. Dist. LEXIS 8699, at *31 (W.D. Va. Jan. 23, 2014) (citing *Twombly*, 550 U.S. at 555) (ruling as insufficiently pleaded an allegation that a "defendants' acts and omissions show a reckless and callous indifference and disregard for the plaintiff's state and federally protected rights").

In its quest to punish Mr. Ellis, USI seeks punitive damages in Count VI related to this alleged interference with Colonial Ford, DMI, and other unknown clients. A close look at the Complaint, however, reveals that USI has pleaded no facts evincing the sort of malicious, wanton, willful, or reckless behavior required to obtain punitive damages. For example, USI pleads in paragraph 92 of the Complaint that "Ellis utilized and benefited from and, if he waits out his post-termination obligations, will continue to benefit from, his willful, malicious, intentional, and wrongful conduct, which included his misuse of USI's Confidential Information to intentionally and wrongfully induce [Colonial Ford] and [DMI] to terminate their contractual

13

relationships with USI." *See* Compl. ¶ 92.  Nowhere in the Complaint does USI explain Mr. Ellis's alleged "misuse of USI's Confidential Information" with any detail.  Nor are there facts evincing Mr. Ellis's individual actions or intentions that amount to a level of malice or wrongfulness worthy of punishment through exemplary damages.  There are no particulars about statements uttered by Mr. Ellis or when or how he acted and why such behavior requires punishment as opposed to a mere redress of lost economic expectations.  These allegations are more akin to the "formulaic recitations" that cannot pass muster under Rule 12(b)(6).

For these reasons, Plaintiff's claim for punitive damages found in Count VI of the Complaint cannot stand and must be dismissed with prejudice.

## IV.
## CONCLUSION

In summary, Plaintiff's claims asserted in Counts III, V, and VI against Defendant fail to state claims upon which relief can be granted under Virginia law.  As demonstrated above, USI's Complaint overstates its claims against Mr. Ellis and requires the Court's intervention to ensure that Mr. Ellis can properly defend himself against plausible allegations.  For each of the foregoing reasons, the Defendant respectfully requests that this Court dismiss Counts III, V, and VI, with prejudice.

Dated: January 31, 2022                         Respectfully submitted,

**DWIGHT DREW ELLIS, II**

By Counsel

_____/s/_____
C. Michael DeCamps (VSB No. 15066)
Brian G. Muse (VSB No. 47218)
D. Patrick Callahan (VSB No. 87366)
SANDS ANDERSON PC
2400 Bank of America Center
1111 East Main Street (23219)
P. O. Box 1998
Richmond, Virginia 23218-1998
Telephone:     (804) 648-1636
Facsimile:      (804) 783-7291
E-mail: mdecamps@sandsanderson.com
E-mail: bmuse@sandsanderson.com
E-mail: pcallahan@sandsanderson.com

15

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to the following:

> Lauri Elizabeth Cleary, Esquire
> Lerch, Early & Brewer, Chtd.
> 7600 Wisconsin Avenue
> Suite 700
> Bethesda, MD  20814

>                           */s/*
> C. Michael DeCamps (VSB No. 15066)
> Brian G. Muse (VSB No. 47218)
> D. Patrick Callahan (VSB No. 87366)
> SANDS ANDERSON PC
> 2400 Bank of America Center
> 1111 East Main Street (23219)
> P. O. Box 1998
> Richmond, Virginia 23218-1998
> Telephone:    (804) 648-1636
> Facsimile:     (804) 783-7291
> E-mail: mdecamps@sandsanderson.com
> E-mail: bmuse@sandsanderson.com
> E-mail: pcallahan@sandsanderson.com