IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

USI INSURANCE SERVICES,
LLC,
          Plaintiff,

v.                                                    Civil Action No. 3:21cv797

DWIGHT DREW ELLIS, II,
          Defendant.

## OPINION

In January 2021, USI Insurance Services, LLC ("USI") terminated the employment of Dwight Drew Ellis, II ("Ellis"), for unspecified misconduct. After Ellis's termination, USI discovered that Ellis had diverted business from USI to its competitors and solicited existing USI clients to move their business to USI's competitors. USI then sued Ellis. In its amended complaint, USI sues Ellis for breach of his employment contract for soliciting clients and active prospective clients (Counts I and II); breach of his employment contract's implied covenant of good faith and fair dealing (Count III); breach of the duty of loyalty (Count IV); unjust enrichment (Count V); tortious interference with contractual relations (Count VI); and statutory business conspiracy (Counts VII and VIII). (ECF No. 18.) Ellis moves to dismiss Counts III through VIII.

The Court will grant the motion in part and dismiss Count V because unjust enrichment does not apply when the parties have a contract. The Court will deny the motion as to the remaining counts because the plaintiff has plausibly stated claims upon which relief may be granted.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

USI acquired Wells Fargo Insurance Services USA, Inc. ("Wells Fargo"), in December 2017. At that time, Ellis had worked for Wells Fargo for about ten years as a "Commercial Risk [Insurance] Producer." (ECF No. 18 ¶ 1.) Just prior to the acquisition, Ellis and Wells Fargo entered into an employment agreement, which included a two-year non-solicitation and non-service clause for "Client Accounts" and a six-month non-solicitation and non-service clause for "Active Prospective Accounts."[1] The employment agreement included a provision allowing Wells Fargo to assign the agreement. (*Id.* at 19.) Ellis worked for USI in the same position for another four years before USI terminated his employment for unspecified misconduct in January 2021. Ellis then went to work for a former USI client.

After terminating Ellis's employment, USI learned that he had diverted over one hundred small accounts (the "Small Employee Accounts") to a competitor (Brandon Chisolm), beginning in 2017.[2] (*Id.* ¶¶ 40, 42.) Ellis conspired with Barbara Bailey, a former colleague from Wells Fargo, to divert four significant client accounts (Acorn Sign Graphics, Carter Printing Company, Colonial Ford Truck Sales, and Berger and Burrow Enterprises; collectively, the "Significant Client Accounts") from USI to Bailey's employer, a competitor.[3] (*Id.* ¶ 54.) Ellis also

---

[1] The employment agreement defined a Client Account as "the account of any client ... which is or was serviced by the Company in connection with the Company's business." (ECF No. 18-1, at 4.) The employment agreement defined an Active Prospective Client as "any Person or group of Persons who the Company specifically solicited or had documented plans to solicit within the six (6) months preceding the termination of Producer's employment hereunder." (*Id.*)

[2] The Small Employee Accounts consisted of "accounts that did not generate, or were not expected to generate, annual net commissions and fees in excess of ten thousand dollars." (ECF No. 18 ¶ 33.) USI did not pay commissions on these accounts and derived some income from servicing the Small Employee Accounts either through its "Small Employee Benefits Unit" (or "Small EB Unit") or by referring these accounts to certain brokerages. (*Id.* ¶ 34.)

[3] Two of the Significant Client Accounts switched to a USI competitor prior to Ellis's termination. (*Id.* ¶¶ 3, 90.)

2

"park[ed]" some former USI clients at a USI competitor to wait out his two-year non-service term. (*Id.* ¶ 49.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the evidentiary merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not extend to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must therefore allege facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## III. DISCUSSION

As discussed above, Ellis has moved to dismiss Courts III through VIII of the amended complaint. At this early stage in the litigation, the Court can only dismiss Court V, alleging unjust enrichment. Although the other claims may prove to be little more than window dressing on a suit for breach of contract, they plausibly state claims that can survive a motion to dismiss. The Court now discusses the motion to dismiss as to each count.

### A. *Breach of Employment Agreement: Covenant of Good Faith and Fair Dealing (Count III)*

With respect to Count III, Ellis argues that a breach of the covenant of good faith and fair dealing does not create an independent cause of action. He says that, at best, Count III duplicates the breach of contract claims in Counts I and II.

"In Virginia, every contract contains an implied covenant of good faith and fair dealing." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009). But "[u]nder Virginia law, the implied covenant of good faith and fair dealing 'cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 216 (4th Cir. 2019) (quoting *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997)). "A breach of the implied duty of good faith and fair dealing must be raised in a claim for breach of contract, as opposed to a claim in tort." *Stoney Glen, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 465 (E.D. Va. 2013). "In Virginia, the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto*, 624 F. Supp. 2d at 450. Plaintiffs properly plead their claim when they allege "bad faith and unfair dealing." *Id.* at 451.

USI alleges Ellis breached the implied covenant of good faith through two ongoing acts of bad faith and unfair dealing: (1) by soliciting the Significant Client Accounts to move their business to a competitor; and (2) by diverting more than one hundred Small Employee Accounts to another competitor. Inducing existing clients to move to a competitor appears to violate specific provisions in the employment agreement. USI asserts that, in diverting the Small Employee Accounts to a competitor, "Ellis was aware or should have been aware" that producers

4

like Ellis "were not to prospect such accounts, much less refer them out or work with a competitor to service them." (ECF No. 18 ¶ 35.) USI describes these actions as willful and wanton. (*Id.* ¶ 44.)

Although USI makes identical allegations in Counts I and II, it asserts a separate theory of how Ellis breached the employment agreement in Count III. USI properly raises the breach of good faith and fair dealing in a claim for breach of contract. Accordingly, USI states a claim upon which relief may be granted.

### *B. Breach of Duty of Loyalty (Count IV)*

Ellis moves to dismiss Count IV for failure to state claim by arguing that the economic loss doctrine forecloses the plaintiff's claim. USI alleges Ellis breached his duty of loyalty by diverting business to competitors, removing confidential information, and conspiring with USI's competitors. USI identifies the duty of loyalty as the "common law duty of loyalty." (*Id.* ¶ 5.)

Ellis argues that the economic loss doctrine prevents USI from prevailing at the motion to dismiss stage because USI has not identified a separate source of the duty of loyalty outside the employment agreement. The economic loss doctrine prohibits a tort remedy when the allegedly breached duty arose only as a matter of contract. "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 360, 699 S.E.2d 483, 489 (2010) (quoting *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004)). The critical question "is whether the [plaintiff] alleged that [the defendant] breached a duty owing to them independent of any duties assumed by [the defendant] pursuant to the [c]ontract." *Id.* at 361, 489. "To avoid turning every breach of contract into a tort, however, we have enunciated the rule that, in order to recover in tort, 'the duty tortiously or negligently breached must be a

5

common law duty, not one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290, 293 (2007) (quoting *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)).

Virginia courts "have long recognized that under the common law an employee, including an employee-at-will, owes a fiduciary duty of loyalty to his employer during his employment." *Williams v. Dominion Tech. Partners, L.L.C.*, 265 Va. 280, 289, 576 S.E.2d 752, 757 (2003). "Subsumed within this general duty of loyalty is the more specific duty that the employee not compete with his employer during his employment." *Id.* "Certain conduct ... will clearly constitute a breach of the duty of loyalty he owes to his employer. Principally, an employee must not have 'misappropriated trade secrets, misused confidential information, [or] solicited an employer's clients or other employees prior to termination of employment.'" *Id.* at 291, 578 (quoting *Feddeman & Co. v. Langan Assoc.*, 260 Va. 35, 42, 530 S.E.2d. 668, 672 (2000)).

USI alleges that Ellis breached his duty of loyalty to USI by directly competing with his employer during the term of his employment. Principally, USI alleges that Ellis solicited the Significant Client Accounts to move their business to a competitor, received referral fees on Small Employee Accounts he should have referred to the Small EB Unit, and removed USI's confidential information after his termination.

Because USI has identified the common law as the source of Ellis's duty of loyalty to USI, the economic loss doctrine does not prevent USI's recovery in tort. Viewed in the light most favorable to the plaintiff, the amended complaint adequately pleads a breach of Ellis's duty of loyalty to USI because it identifies instances in which Ellis competed with USI.

### *C. Unjust Enrichment (Count V)*

Ellis moves to dismiss Count V, arguing that the existence of an employment contract precludes the extra-contractual remedy of unjust enrichment. USI alleges Ellis unjustly enriched himself when he steered Significant Client Accounts and Small Employee Accounts to USI competitors and received kickbacks.

"The existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *CGI Fed. Inc. v. FCi Fed., Inc.*, 295 Va. 506, 519, 814 S.E.2d 183, 190 (2018). "An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract." *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988). When parties have an express contract, the district court should properly dismiss a claim for unjust enrichment. *See id.* "Where a contract governs the relationship of the parties, the equitable remedy of ... unjust enrichment does not lie." *WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528, 534 (4th Cir. 2000).

The parties do not dispute the existence of an express contract governing the employment relationship. USI argues that it pleads unjust enrichment in the alternative. Regardless, the Virginia Supreme Court and the Fourth Circuit have consistently held that the undisputed existence of a valid contract precludes a claim for unjust enrichment. *See, e.g., Acorn*, 846 F.2d at 926; *CGI Fed. Inc.*, 295 Va. at 519, 814 S.E.2d at 190. Given the express employment contract at the heart of this dispute, USI fails to state a claim for unjust enrichment.

### *D. Tortious Interference with Contractual Relations (Count VI)*

Ellis makes two arguments in support of his motion to dismiss Count VI. First, he argues that USI has failed to plead this count with sufficient detail. Second, as in his argument to dismiss Count IV, Ellis asserts that the economic loss doctrine forecloses the plaintiff's recovery

7

for tortious interference with contractual relations. USI alleges that Ellis tortiously interfered with its contractual relations (1) by steering Significant Client Accounts to a competitor; and (2) by diverting Small Employee Accounts to other competitors instead of USI's own Small EB Unit or its preferred referral brokerages. (ECF No. 18 ¶ 89.)

In Virginia, a claim for tortious interference with contractual relations includes the following elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Schaecher v. Bouffault*, 290 Va. 83, 106, 772 S.E.2d 589, 602 (2015).

"[W]hen a contract is *terminable at will*, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed *improper* methods." *Duggins v. Adams*, 234 Va. 221, 226–27, 360 S.E.2d 832, 836 (1987) (internal quotation omitted). "Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship." *Id.* at 227, 836.

Ellis asserts that, because the Significant Client Accounts had renewable contracts and were therefore terminable at will, USI must allege that Ellis employed improper methods. He argues USI has failed to plead improper methods with sufficient detail. (ECF No. 23, at 8.) USI has alleged improper methods, specifically that Ellis misused confidential information and USI's resources (including Ellis's USI email account) to help a competitor prepare a quote for a Significant Client Account's business. (ECF No. 18 ¶ 90.)

Next, Ellis resurrects his economic loss doctrine argument to assert that USI may not seek recovery in tort for tortious interference with contractual relations because USI has also made claims for breach of contract. The economic loss doctrine, as discussed above, prevents recovery in tort for the breach of a duty only assumed by contract. *Abi-Najm*, 280 Va. at 360–61, 699 S.E.2d at 488–89. In "determining whether 'the damages claimed in a particular case may more readily be classified' as having their origin in tort or contract," the Fourth Circuit has found that "'[t]he controlling policy consideration underlying the law of contracts is the protection of expectations bargained for.'" *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) (quoting *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988)). "Notwithstanding the limitations on certain tort actions created by the economic loss doctrine, it is well-established that 'a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort.'" *Abi-Najm*, 280 Va. at 361, 699 S.E.2d at 489 (quoting *Dunn Constr. Co., Inc. v. Cloney*, 278 Va. 260, 266–67, 682 S.E.2d 943, 946 (2009)). Nevertheless, "[t]he rule's purpose ... is not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim." *City of Richmond, Va.*, 918 F.2d at 446.

USI argues that Ellis's economic loss theory does not apply because tortious interference with contractual relations exists as a tort independent of the duties Ellis assumed in his employment agreement. Virginia recognizes an independent duty not to interfere in others' contractual relations. *See, e.g., Schaecher*, 290 Va. 83, 772 S.E.2d 589. USI further argues that Virginia courts have not applied the economic loss doctrine in cases involving intentional torts, which include tortious interference with contractual relations. (ECF No. 24, at 19 (citing *City of Richmond, Va.*, 918 F.2d at 446).)

9

USI has adequately pleaded tortious interference with contractual relations because it has detailed Ellis's alleged improper methods and identified an independent duty not to interfere with contractual relations. The economic loss doctrine does not prevent USI from pleading this claim. Accordingly, and when viewed in the light most favorable to the plaintiff, the amended complaint has stated a claim upon which relief may be granted.

### *E. Statutory Business Conspiracy (Counts VII and VIII)*

Ellis moves to dismiss the amended complaint's Counts VII and VIII, arguing USI has not pleaded these counts with sufficient detail to satisfy *Twombly* and *Iqbal* pleading standards. USI alleges that Ellis conspired with others to deprive USI of income from both Small Employee Accounts (Count VII) and Significant Client Accounts (Count VIII).

"To recover in an action under the [business conspiracy] statutes, a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff.'" *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 214, 754 S.E.2d 313, 317 (2014) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449, 318 S.E.2d 592, 596 (1984)). "It is not necessary for a plaintiff to prove that the defendant conspirators acted with actual malice, i.e., ill-will, hatred, or spite directed toward the plaintiff." *Id.* at 215, 317. Instead, the "plaintiff must establish ... only that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification.'" *Id.* (quoting *Commercial Bus. Sys., Inc. v. BellSouth Servs.*, 249 Va. 39, 47, 453 S.E.2d 261, 266–67 (1995)). "[T]ortious interference with contract and tortious interference with business expectancy each constitute the requisite 'unlawful act' to proceed on a business conspiracy claim under Code §§ 18.2–499 and –500." *Id.* at 218, 319.

USI has identified two co-conspirators (Barbara Bailey and Brandon Chisolm). (ECF No. 18 ¶¶ 32, 42.) It asserts that Ellis acted with these co-conspirators with the intent to harm USI's business. It argues that Ellis's tortious interference with its contractual relations "constitute[s] the requisite 'unlawful act' to proceed on a business conspiracy claim." *Dunlap*, 287 Va. at 218, 754 S.E.2d at 319. USI identifies its damages as at least $265,000 (from Significant Client Accounts) and $75,000 (Small Employee Accounts). (ECF No. 18 ¶¶ 106, 109.) Ellis argues that USI has failed to plead beyond a recitation of the elements because it fails to allege details of how the alleged conspirators combined or acted to harm USI's business. USI argues that "Ellis's conduct was necessarily secretive, as conspiracies ordinarily are." (ECF No. 24, at 12.) Regardless, the Fourth Circuit does not require such detail at the pleading stage. *See T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC*, 385 F.3d 836, 845 (4th Cir. 2004) (finding that the plaintiff had "properly pleaded a claim for ... statutory conspiracy" when she had alleged "parties to the conspiracy acted together" to harm the plaintiff, that the conspirators acted intentionally, and that the conduct caused "substantial monetary damages").

Viewing the facts alleged in the light most favorable to the plaintiff, the Court finds the plaintiff has adequately pleaded business conspiracy.

## IV. CONCLUSION

The Court will grant the motion in part and will dismiss Count V.

The Court will not dismiss Courts III, IV, and VI through VIII at this time. The amended complaint plausibly alleges facts supporting the various claims asserted—at least plausibly enough to survive a motion to dismiss. The Court suspects that with a fuller development of the evidence, this case will boil down to a suit for breach of contract, and urges the parties to focus on the express contractual terms.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

/s/
John A. Gibney, Jr.
Senior United States District Judge

Date: 27 February 2023
Richmond, VA